UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY HARDY,

    Plaintiff,

v.                                                    Case No. 1:16-CV-1415

COMMUNITY MENTAL HEALTH           HON. GORDON J. QUIST
ORGANIZATION, et al.,

    Defendants.
                                           /

## **OPINION**

Plaintiff, Greg Hardy, has sued Defendants alleging violations of his First, Eighth, and Fourteenth Amendment rights arising out of his termination from employment at the Justice In Mental Health Organization. All Defendants have moved to dismiss. The motions have been fully briefed and are ready for decision.[1]

### I. ALLEGATIONS

Defendant Clinton-Eaton-Ingham Community Mental Health (CMH) is a Community Mental Health Services Provider organized under the Michigan Mental Health Code.

Defendant Justice In Mental Health Organization (JIMHO) is a private non-profit corporation with a contractual relationship with CMH. JIMHO runs "a consumer run drop-in service on an independent contractor basis." (ECF No. 11-5 at PageID.95.) JIMHO receives state and federal funding through CMH, and has agreed to follow various guidelines of operation. (*Id.*

---

[1] All Defendants requested oral argument on their motions. However, the motions have been fully briefed and the Court believes oral argument to be unnecessary. W.D.Mich. LCivR 7.2(d).

at PageID.96.) Defendants Brian Wellwood, Emily Jarvis, Terry Cuyler, Vicki Sandbrook and Patrick McPherson were employees of JIMHO.

JIMHO hired Plaintiff Gregory Hardy in July 2014. (ECF No. 1 at PageID.5.) Plaintiff was hired to work as a front desk clerk at JIMHO's drop-in center in Lansing, Michigan. (*Id*.) On February 26, 2015, a JIMHO member[2] Rodquies Johnson assaulted Plaintiff while Plaintiff was at work. (*Id*.) Plaintiff contacted the Lansing Police Department to initiate a complaint against Johnson. (*Id*. at PageID.6.)

Defendant Terry Cuyler witnessed the assault, and allegedly told Plaintiff that Cuyler had called 911. Plaintiff alleges that Cuyler did not in fact call the police at the time of the assault, and only spoke with the police after Plaintiff contacted the police himself. Cuyler also allegedly tried to convince the prosecuting attorney not to file charges against Johnson.

Defendant Emily Jarvis was Plaintiff's supervisor at JIMHO. Plaintiff claims that Jervis and Cuyler issued Plaintiff a written warning on February 27, 2015, the day after the assault, after Plaintiff complained about his injuries and threatened to sue JIMHO. (*Id*. at PageID.8.) The warning notes that Plaintiff was in a physical altercation with a JIMHO member, and would be fired if he was in another physical or verbal altercation. (ECF No. 1-1 at PageID.21.)

Plaintiff later met with Defendants Wellwood, Cuyler, and Jarvis and confronted Cuyler about Cuyler's "delusional statements and false write-ups both created which is (bogus)." (ECF No. 1 at PageID.8.) Plaintiff met again with Wellwood, Jarvis, and Cuyler on March 6, 2015, to complain that Cuyler was behaving inappropriately because Cuyler lacked interest in "properly resolv[ing] the assault incident, as Defendant Cuyler stood watching, giving false statements to state's prosecutor, or false information to police officer(s) as to his involvement, when question

---

[2] "Member" appears to be a term used for a customer or client of JIMHO.

would later delude statements." (*Id.* at PageID.9.) Johnson was allowed to return to the JIMHO drop-in center after 45 days. (*Id.*)

Plaintiff continued to complain to Jarvis that Jarvis failed to enforce adequately JIMHO policy regarding members who became threatening or verbally abusive. (*Id.* at PageID.10.) Jarvis was rude to Plaintiff as a response, and "began to act if though she had a bad attitude daily in how she chose to express herself to plaintiff as to degrade him, making plaintiff feel singled[]out, believing that there was a problem with her about him being black." (*Id.*) Plaintiff also alleges that Jarvis did not allow Plaintiff to secure his coat while working and stopped Plaintiff from using rubbing alcohol to clean his work area, which was infested with bed bugs. (*Id.*)

In May 2015, Plaintiff told Defendant Vicki Sandbrook that JIMHO members Kevin Starnes and Cirus Milton had performed oral sex on each other. (*Id.* at PageID.11.) Defendant Sandbrook allegedly told Starnes and Milton what Plaintiff told her, causing Milton to harass Plaintiff. (*Id.*) Sandbrook also researched Plaintiff's background and reminded Plaintiff that Plaintiff was a registered sex offender and falsely accused Plaintiff of threatening to rape her. (*Id.* at PageID.12.) Sandbrook and Jarvis then began harassing Plaintiff, and Wellwood allegedly allowed this harassment because Sandbrook, Jarvis, and Wellwood are all white. (*Id.*)

In August of 2015, Plaintiff overheard Milton and Defendant Patrick McPherson discussing Plaintiff's sex offender status. (*Id.* at PageID.14.) McPherson later told Jarvis that "we need to get rid of this nigger." (*Id.*) Plaintiff was given another written warning and suspended for three days without pay after Defendant McPherson told an unspecified lie to other defendants. (*Id.* at PageID.15.)

Around the same time that he was suspended, Plaintiff contacted CMH and "sought to seek his administrative remedies concerning each of the issues." (*Id.*) Plaintiff spoke with Defendant

3

Greg Fox, who "refused to assist plaintiff in anyway [sic]" and "so rudely explained that there infact [sic] was no such grievance forms designed for (JIMHO), or for its employees." (*Id.*) "Defendant Fox later contacted Defendant Wellwood to inform him that it was in their best interest to get rid of the plaintiff." (*Id.*)

After Defendant Cuyler filed another complaint, Plaintiff was terminated from JIMHO some time after October 20, 2015. (*Id.* at PageID.16.)

## II. STANDARD

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Detailed factual allegations are not required, but "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)). The court must accept all of the plaintiff's factual allegations as true and construe the complaint in the light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). Courts may also consider various documents without converting the motion to a motion for summary judgment. "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has

4

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,'...it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

### III. DISCUSSION

#### A. CMH and Defendant Fox

1. First Amendment Retaliation

A First Amendment retaliation claim requires proof that

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). The CMH Defendants argue that the complaint fails to allege properly any of these elements.

Plaintiff argues that the protected activity was his complaint to CMH and Defendant Fox regarding the assault at JIMHO, and that adverse action occurred when the JIMHO Defendants "conspired to cover the assault… refused to treat him for injuries… [and] fired him according to their policies or procedures after he stated he would file suit because they refused to assist him." (ECF No. 18 at PageID.267.)

The complaint alleges that the JIMHO Defendants, rather than CMH, took these actions. The only arguably adverse action alleged to have been taken by either CMH or Defendant Fox would be that "Defendant Fox [] contacted Defendant Wellwood to inform him that it was in their best interest to get rid of the plaintiff," but Plaintiff did not develop or argue any legal theory based on this single line in the complaint. (*Id*.) This claim against CMH and Defendant Fox will be dismissed.

### 2. Deliberate Indifference

The complaint alleges a count of deliberate indifference to a serious medical need under the Eighth Amendment. (ECF No. 1 at PageID.4.) As the CMH Defendants point out, however, deliberate indifference claims apply only to post-conviction inmates through the Eighth Amendment and to pretrial detainees through the Fourteenth Amendment. *See Ford v. Cnty. of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008). Plaintiff does not allege that he was in any sort of custody at the time of his alleged mistreatment. This claim will be dismissed against CMH and Defendant Fox.

### 3. Fourteenth Amendment Employment Discrimination

Finally, Plaintiff alleges that CMH Defendants violated Plaintiff's Fourteenth Amendment rights. To succeed on a Fourteenth Amendment claim in the employment context, the plaintiff must establish that (1) a public employer took adverse employment action against him and (2) "that the employment decision at issue would not have been made 'but for' the plaintiff's race." *Toth v. City of Toledo*, 480 F. App'x 827, 832 (6th Cir. 2012) (citing *Weberg v. Franks*, 229 F.3d 514, 522 (6th Cir. 2000)).

The CMH Defendants argue that "Plaintiff has not alleged, let alone established, that Defendant CEI-CMH was his employer. Further, he has not alleged, let alone established, that

CEI-CMH or Mr. Fox took an adverse employment action against him or otherwise discriminated against him based on his race." (ECF No. 11 at PageID.81.) The CMH Defendants are correct. The complaint alleges that several JIMHO Defendants took adverse action against him, but does not allege that CMH or Defendant Fox took any action with regard to the Defendant based on Defendant's race. This claim will be dismissed against CMH and Defendant Fox.

### B. JIMHO Defendants

The JIMHO Defendants argue that their activity does not amount to state action required for liability under § 1983. "To state a claim under § 1983, plaintiffs 'must demonstrate that the defendant deprived them of their 'rights, privileges, or immunities secured by the Constitution' under color of state law.'" *Campbell v. PMI Food Equip. Grp., Inc.*, 509 F.3d 776, 783 (6th Cir. 2007) (quoting *Lindsey v. Detroit Entm't, LLC*, 484 F.3d 824, 827 (6th Cir. 2007)). "The 'ultimate issue' in determining whether a private party is subject to suit under § 1983 is whether 'the alleged infringement of federal rights [is] fairly attributable to the State.'" *Id.* at 783–84 (quoting *Rendell–Baker v. Kohn*, 457 U.S. 830, 838, 102 S. Ct. 2764, 2770 (1982) (alterations in original)). Plaintiff advances two theories of state action.

#### 1. State Compulsion

Plaintiff argues that JIMHO was a state actor under the "state compulsion" test because JIMHO's contract with CMH required JIMHO to "comply with rules and policies established by" CMH. (ECF No. 18 at PageID.258.) "The state compulsion test requires that 'a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state.'" *Campbell*, 509 F.3d at 784 (quoting *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)). Because "[n]o state law or any

7

state entity required" JIMHO to terminate Plaintiff's employment, Plaintiff has failed to allege adequately that JIMHO was a state actor under this theory. *Id*.

### 2. Symbiotic Relationship or Nexus Test

Plaintiff also argues that JIMHO could qualify as a state actor under the symbiotic relationship test.

> Under this test, also known as the nexus test, a private party's conduct constitutes state action where "there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself."

*Marie v. Am. Red Cross*, 771 F.3d 344, 363 (6th Cir. 2014) (quoting *Wilcher v. City of Akron*, 498 F.3d 516, 520 (6th Cir. 2007)). "[I]t is important to note that this test evaluates whether 'there is a sufficiently close nexus between the state and *the challenged action*.'" *Id.* (quoting *Wilcher*, 498 F.3d at 520 (emphasis in original)).

In support of this argument, Plaintiff only asserts that "[t]he Defendants Community Mental Health (CMH) and its alleged relationship with Justice In Mental Health Organization (JIMHO), appears to be fairly attributed to state action." (ECF No. 18 at PageID.260.) "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (internal quotation marks and alterations omitted). Plaintiff's assertion amounts to an unsupported and undeveloped argument, and Plaintiff has waived this issue.

8

## IV.  CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions to dismiss.

A separate Order will enter.


Dated: August 25, 2017 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE